UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:                        │
│ DATE FILED:  7/29/14          │
└──────────────────────────────┘
```

MICHAEL RIVERA,                          :

              Plaintiff,              :

         - against -                 :           **REPORT AND**
                                         **RECOMMENDATION**
ANDREA EVANS,                            :           **TO THE HONORABLE**
Chairperson, NYS Division of Parole;                 **GEORGE B. DANIELS**[*]
DORA B. SCHRIRO,                         :
Commissioner, NYC Department of                      13cv6341-GBD-FM
Corrections,[1]                          :

           Defendants.            :

-----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

      In this pro se civil rights action pursuant to 42 U.S.C. § 1983, plaintiff

Michael Rivera ("Rivera") alleges that the defendants falsely imprisoned him and

deprived him of his constitutional right to post bail.  (ECF No. 2 ("Complaint" or

"Compl.")).  The defendants named in the Complaint are Andrea Evans ("Evans"), the

former Chairperson of the New York State Department of Corrections and Community

Supervision ("DOCCS"), and Dora B. Schriro ("Schriro"), the former Commissioner of

the New York City Department of Correction ("DOC") (collectively, "Defendants"), both

of whom are sued in their individual and official capacities.  Plaintiff alleges that his

---

[*]     Gregory A. Arutiunov, a student at New York University School of Law, assisted
in the preparation of this Report and Recommendation.

[1]     Although I have not corrected the caption, the correct name of the City agency is
"Department of Correction," not "Department of Corrections."  See N.Y.C. Charter § 621.

constitutional rights were violated when he was refused bail because of an expired parole
violation warrant.

> The Defendants have moved to dismiss Rivera's complaint pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure.  (ECF Nos. 24, 28).  For the reasons set
forth below, I recommend that the Defendants' motions be GRANTED.

## I.    Factual Background

> The following facts derived from Rivera's complaint and opposition papers
are presented in the light most favorable to him and, for present purposes, are assumed to
be true.

> On July 27, 2012, Rivera was released on parole following an earlier
conviction for Criminal Sale of a Controlled Substance in the Fifth Degree.  (ECF No. 32
(Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Opp. Mem.")), Ex. C at 1).  The parole
conditions to which Rivera agreed as a condition of his release required him not to
"violate the provisions of any law" or "possess any controlled substance."  (Id. at 8).
Rivera further acknowledged that a violation of parole conditions "may result in the
revocation of [his] release."  (Id.).

> On May 17, 2013, while still under parole supervision, Rivera was
rearrested and charged with Criminal Sale of a Controlled Substance in the Third Degree
and Criminal Possession of a Controlled Substance in the Seventh Degree.  (Id. at 3).  At
Rivera's arraignment and bail hearing, bail was set at $3,499.  (Id.).  Thereafter, Rivera's
wife, Yvonne Vega ("Vega"), went to an unspecified bail bondsman who refused to issue

a bail bond because parole warrant number 573966 appeared to be outstanding against Rivera.  (Compl. ¶ II.D).  The DOC then gave Rivera the "run around" for "approximately two months," at which point he petitioned for a writ of habeas corpus. (Id.).  On August 14, 2013, after "another two months" of "going back and forth to Court," Rivera was told by an unspecified representative of the New York State Attorney General that the parole violation warrant alleged to be outstanding was "four or five years old and . . . no longer any good."  (Id.).

While in custody, Rivera filed a grievance with the DOC on May 24, 2013. (Id. ¶ IV.E; Pl.'s Opp. Mem., Ex. D at 1).  In that grievance, Rivera reported that "a bail bonds man" had informed Vega that the outstanding parole warrant needed to be lifted before Rivera could post bail.  (Pl.'s Opp. Mem., Ex. D at 1).  Rivera did not receive a response to his grievance.  (Compl. ¶ IV.E).

On July 12, 2013, Rivera pleaded guilty to a misdemeanor charge of Criminal Possession of a Controlled Substance in the Seventh Degree and was sentenced to the maximum sentence of one-year in jail.  (Pl.'s Opp. Mem., Ex. C at 3).  At that point, a parole violation warrant was issued.  (Id.).  A Violation of Release Report also was prepared, which indicated that Rivera's conviction on May 17, 2013, constituted a violation of the conditions of his parole.  (Id. at 1).

II.       Procedural Background

        Rivera commenced this action in September 2013.  (ECF No. 2).  In his Complaint, Rivera claims to have been "falsely imprisoned" and "deprived of [his] constitutional right to post bail."  (Compl. ¶ III).  He seeks damages for "emotional stress and anguish," as well as his family's "severe emotional stress and financial hardship because [he is] the primary b[r]eadwinner in [his] family."  (Id.).  Rivera alleges that the defendants, who are named in both their individual and official capacities, are subject to "supervisory liabl[ity] for administration of . . . records in [their] agenc[ies]."  (Pl.'s Opp. Mem. at 2).  He seeks $100,000 in damages from each defendant.  (Compl. ¶ V).

        On October 17, 2013, the case was referred to me for general pretrial supervision and dispositive motions.  (ECF No. 7).  On January 22, 2014, defendant Evans filed her motion to dismiss.  (ECF No. 24).  Thereafter, on January 24, 2014, defendant Schriro followed suit.  (ECF No. 28).  Rivera filed his opposition to defendant Evans' motion on February 24, and his opposition to defendant Schriro's motion on February 26, 2014.  (ECF Nos. 32-33).[2]  Evans replied on March 5, and Schriro replied on March 19, 2014.  (ECF Nos. 36-37).  The motions consequently both are fully briefed.

---

     [2]     Rivera filed separate opposition memoranda, but their text is identical. Accordingly, they will be cited as one document ("Pl.'s Opp. Mem.").

III.   <u>Standard of Review</u>

   A.   <u>Motion to Dismiss</u>

       A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal

sufficiency of [a] plaintiff's claim[s] for relief."  <u>Krasner v. HSH Nordbank AG</u>, 680 F.

Supp. 2d 502, 511 (S.D.N.Y. 2010) (Lynch, D.J.).  In deciding the motion, the Court must

accept as true all factual allegations made in a complaint and draw all reasonable

inferences of the plaintiff.  <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir.

2006).  A complaint need not contain "detailed factual allegations."  <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)).  Nonetheless, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S.

at 555).

       To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u>

(quoting <u>Twombly</u>, 550 U.S. at 570).  Determining whether the allegations of a complaint

nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires

the Court to draw on its judicial experience and common sense.  <u>Id.</u> at 679-80.  In making

its assessment, the Court may consider, in addition to a plaintiff's factual averments, any

written instrument upon which the plaintiff necessarily relies, regardless of whether it is

attached to the complaint or incorporated therein by reference, <u>Chambers v. Time</u>

<u>Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002), as well as any public records,

including complaints filed in state court, <u>Blue Tree Hotels Inv. (Canada), Ltd. v.</u>

<u>Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004).

Furthermore, the Court may take judicial notice of indisputable facts.  <u>See</u> Fed. R. Evid.

201.  Legal conclusions masquerading as factual averments, however, may not be taken

into account.  <u>Twombly</u>, 550 U.S. at 555.

       B.    <u>Pro Se Plaintiffs</u>

       The Court must read <u>pro se</u> pleadings "liberally" and interpret them "to

raise the strongest arguments" that they may suggest.  <u>Chavis v. Chappius</u>, 618 F.3d 162,

170 (2d Cir. 2010) (quoting <u>Harris v. City of N.Y.</u>, 607 F.3d 18, 24 (2d Cir. 2010)).

When a plaintiff is proceeding <u>pro se</u>, the Court also may rely on materials outside the

complaint in assessing the legal sufficiency of the plaintiff's claims.  <u>See</u> <u>Crum v. Dodrill</u>,

562 F. Supp. 2d 366, 373-74 (N.D.N.Y. 2008) (citing <u>Gadson v. Goord</u>, No. 96 Civ. 7544

(SS), 1997 WL 714878, at * 1 n.2 (S.D.N.Y. Nov. 17, 1997)).  "Dismissal of a <u>pro se</u>

complaint is nevertheless appropriate where a plaintiff has clearly failed to meet

minimum pleading requirements."  <u>Carvel v. Ross</u>, No. 09 Civ. 722 (LAK) (JCF), 2011

WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

IV.    <u>Discussion</u>

       In their motions to dismiss, the Defendants argue that Rivera (a) cannot

state a claim for false imprisonment due to his conviction, (b) had no constitutional right

to bail, (c) has not alleged the personal involvement of either defendant, (d) has not

sufficiently alleged municipal liability, and (e) has not alleged compensable damages.

(See ECF Nos. 26 ("Evans Mem."), 29 ("Schriro Mem.")).  All five contentions are correct.

        A.      <u>False Imprisonment</u>

        Although Rivera's Complaint raised allegations of false imprisonment, he now seeks leave to amend his Complaint in order to withdraw that claim. (Pl.'s Opp. Mem. at 9).  It is, of course, settled law that a guilty plea bars a false imprisonment claim.  <u>Pinero v. Casey</u>, No. 10 Civ. 4803 (JSR) (JCF), 2012 WL 832509, at *7 (S.D.N.Y. Mar. 13, 2012).  Accordingly, Rivera should be permitted to withdraw that claim.  <u>See, e.g.</u>, <u>Washington v. James</u>, 782 F.2d 1134, 1138 (2d Cir. 1986) (affidavit filed after defendant's Rule 12(b)(6) motion should be deemed to amend <u>pro</u> <u>se</u> complaint).  Thus, Rivera's only remaining claim is that he was denied a constitutional right to bail.

        B.      <u>Denial of Right to Bail</u>

           1.      <u>No Right to Bail</u>

        "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  Rivera alleges that the defendants deprived him of his "constitutional right to post bail."  (Compl. ¶ III).  A parole violator has no right to post bail, however, as "[b]ail pending a parole revocation hearing is . . . granted only in [the] 'most unusual circumstances.'"  <u>Galante v. Warden</u>, 573 F.2d 707, 708 (2d Cir. 1977) (quoting <u>Argro v. United States</u>, 505 F.2d 1374, 1378 (2d Cir. 1974)).  This is because "[t]he presumption

of innocence is no longer available [for a parolee] and the threat of reincarceration may prove a strong inducement for flight." Argro, 505 F.2d at 1378. Here, it is undisputed that Rivera had, in fact, violated his parole. Moreover, Rivera alleges no unusual circumstances that would have entitled him to bail as a matter of law. Consequently, he has alleged no constitutional violation.

       2.     <u>Personal Involvement</u>

Even if Rivera had a right to bail, he still has not shown that his claim is properly brought against the named defendants. To state a § 1983 claim, a plaintiff must "show that the alleged deprivation was committed by a person acting under color of state law." West, 487 U.S. at 48. The plaintiff also must allege that a particular defendant was personally involved in depriving the plaintiff of his rights. Costello v. City of Burlington, 632 F.3d 41, 48-49 (2d Cir. 2011) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).

In Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the Second Circuit held that a plaintiff may establish a prison supervisor's personal involvement by showing that the defendant either: (a) "participated directly in the alleged constitutional violation," (b) "failed to remedy" the violation "after being informed of the violation through a report or appeal," (c) "created a policy or custom under which unconstitutional practices occurred,

or allowed the continuance of such a policy or custom," (d) "was grossly negligent in supervising subordinates who committed the [violation]," or (e) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  Id. at 873 (citing Wright, 21 F.3d at 501).

In Iqbal, the Supreme Court similarly concluded that government officials cannot be held liable for the acts of their subordinates on the theory of respondeat superior and that, instead, plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  556 U.S. at 676.  It is unclear whether, and to what extent, the five Colon categories have survived Iqbal.  See Inesti v. Hicks, No. 11 Civ. 2596 (PAC)(AJP), 2012 WL 2362626, at *11 (S.D.N.Y. June 22, 2012) (noting that Iqbal involved intentional conduct and opining that the Colon standard may still apply in cases involving the "unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments").  In any event, merely pleading that a defendant is a "high-ranking [prison] official . . . is insufficient to establish personal involvement."  Bellezza v. Holland, 730 F. Supp. 2d 311, 317 (S.D.N.Y. 2010) (citing Ayers v. Coughlin, 780 F. 2d 205, 210 (2d Cir. 1985)).

In that regard, it is telling that in Rivera's complaint, the co-defendants appear only in the caption, with no mention of them elsewhere.  See Carrasquillo v. City of N.Y., 324 F. Supp. 2d 428, 435 (S.D.N.Y. 2004) (dismissing complaint against named defendants not discussed in complaint).  In his opposition papers, Rivera attempts to cure this defect by alleging that the "defendants as supervisors of both corrections agencies"

are "in charge of [parole violation warrant] records."  (Pl.'s Opp. Mem. at 3).  This conclusory allegation, however, is plainly insufficient to establish the defendants' personal involvement.

The only allegation regarding Evans that even remotely suggests her personal involvement appears in a letter to the Court dated January 12, 2014.  (ECF No. 23).  In that letter, Rivera alleges that, as a result of Evans' role as "Chairwoman of the New York State Board of Parole," she is "responsible for the day to day operation of the New York State parole process, including lodging of warrants at Rikers Island, and their removal after disposition."  (Id. at 2).  Suffice it to say, it is implausible that merely because Evans oversaw DOCCS' statewide operations, she in fact had control over the lodging of each warrant and its disposition.  Rivera has alleged no facts that would allow the Court to infer that this was a part of Evans' job or that she had any involvement in the specific events leading to his continued detention.

Rivera also alleges that Schriro was "supervisor[il]y liable for a system that allowed a five year old expired parole warrant" to remain extant because she was the DOC Commissioner.  (Pl.'s Opp. Mem. at 3).  Echoing his allegations regarding Evans, Rivera asserts that Schriro was "responsible for the maintenance and upkeep of the records within her agency."  (Id. at 8).  He further alleges that she "ignored the condition of her records," such that her "record keeping was supervised with gross negligence." (Id. at 7-8).  As with respect to Evans, these conclusory allegations are insufficient to support an inference of personal involvement.

Rivera also has alleged that he filed a grievance while he was incarcerated, and that Schriro "failed to act upon [that] grievance." (Id. at 7). He has not, however, alleged that Schriro actually received, reviewed, or participated in any decision to dismiss his grievance. In fact, Rivera alleges only that he did not receive a response. (Compl. ¶ IV.E). "[T]he receipt of letters or grievances, by itself, does not amount to personal involvement." Mateo v. Fischer, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (collecting cases); see also Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010) (no personal involvement on the part of a prison official who received two letters and merely referred them for investigation and response). Accordingly, these allegations fail to establish personal involvement.

Finally, although Rivera states that the defendants were "gross[ly] negligen[t]" for keeping "poor records," (Pl.'s Opp. Mem. at 5), he has not claimed that any other inaccurate records exist beyond the one he alleges prevented him from posting bail. Nor has he shown that the defendants were indifferent to record-keeping violations of which they were aware.

In sum, Rivera's allegations fall far short of the threshold necessary to show that Evans and Schriro were personally involved in the the constitutional deprivation he alleges. His claims against the defendants in their individual capacities therefore fail.

3.      <u>Municipal Liability</u>

Rivera has named defendant Schriro in her official capacity, (Compl. ¶ V), which is equivalent to seeking municipal liability.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity [of which the officer is an agent].").  The DOC is not a suable entity, so Rivera's official-capacity claim against Schriro, liberally construed, amounts to a suit against the City of New York.  <u>See</u> N.Y. City Charter § 396 (providing that all actions against municipal entities "shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law").

To prevail on a claim of municipal liability, a plaintiff must include in his complaint factual allegations suggesting the existence of an officially-adopted policy or custom of the municipality that caused his injury.  <u>See</u> <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 403-04 (1997); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). A plaintiff need not identify an express rule or regulation; "[i]t is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'"  <u>Patterson v. Cnty of Oneida, N.Y.</u>, 375 F.3d 206, 226 (2d Cir. 2004) (quoting <u>Sorlucco v. N.Y.C. Police Dep't</u>, 971 F.2d 864, 870-71 (2d Cir. 1992)).

Here, Rivera alleges only that he was wrongfully detained due to a single expired parole warrant which should no longer have been lodged.  This does not amount

to a showing that he was the victim of a  policy or custom giving rise to municipal liability.  See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").  Having failed to allege that there were any other incidents of expired parole violation warrants, and having made only conclusory allegations regarding the existence of a policy or custom, Rivera has failed to meet the requisite pleading standard.  See, e.g., Irish v. City of N.Y., No. 09 Civ. 5568 (RMB), 2010 WL 5065896, at *5 (S.D.N.Y. Dec. 6, 2010) ("[S]peculative and conclusory allegations of an unlawful custom and practice are insufficient to support a [Monnell] claim of municipality liability"); McAllister v. N.Y.C. Police Department, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation.").  Section 1983 thus entitles Rivera to no relief against Schriro in her official capacity.[3]

---

[3]      Rivera's attempt to seek damages from Evans in her official capacity is similarly unavailing for at least two reasons.  First, although Evans has not addressed this issue, it is settled law that the Eleventh Amendment generally prohibits plaintiffs from recovering damages from state officials in their official capacities.  Graham, 473 U.S. at 169; Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) ("a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment").  There are only two exceptions to this general rule, which apply when there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of the immunity by Congress.  See Graham, 473 U.S. at 169; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  It is settled law, however, that Congress did not abrogate state sovereign immunity by enacting Section 1983.  Quern v. Jordan, 440 U.S. 332, 340-42 (1979).  Nor has New York State waived its immunity with respect to Section 1983 claims.  Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977).  It follows that

(continued...)

4.      <u>Damages</u>

Even if Rivera had stated a claim for a violation of his alleged "right to bail," to recover damages he would need to demonstrate that he suffered some injury as a result of the Defendants' actions.  <u>Miner v. City of Glens Falls</u>, 999 F.2d 655, 660 (2d Cir. 1993) ("[T]o collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff . . . [must have an] actual injury.") (quoting <u>McCann v. Coughlin</u>, 698 F.2d 112, 126 (2d Cir. 1983)).  Rivera seeks compensatory damages based on the "emotional stress and anguish" that he and his family members suffered, as well as their "financial hardship." (Compl. ¶ III).  In support of that claim, Rivera argues that "there is no telling how much time [he] would have received if he were given an opportunity to post bail" and that he would have had "a better chance of receiving a more favorable disposition."  (Pl.'s Opp. Mem. at 6).  In particular, Rivera alleges that he would have been able to "obtain private counsel of his choice" and "transfer his case to a courtroom willing to work with him."  (<u>Id.</u>).

Shorn of speculation, however, Rivera's complaint and opposition papers do not set forth any factual allegations sufficient to support his damages claim.  Rivera's

---

[3](...continued)
any claim against Evans in her official capacity for money damages must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Second, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Accordingly, Section 1983 itself would require the dismissal of Rivera's damages claim against Evans in her official capacity.

allegations that he could have obtained "private counsel of his choice" or that his case might have been transferred to another courtroom plainly are conclusory. Additionally, Rivera does not allege that because he was incarcerated he was denied counsel altogether, his assigned counsel was inadequate, or he was prevented from working with his counsel to prepare a defense. Further, although Rivera characterizes the charges brought against him as "minor," he was charged with two crimes, one of which was Criminal Sale of a Controlled Substance in the Third Degree, (Pl.'s Opp. Mem., Ex. C at 3), a Class B felony, which subjected him to a maximum twenty-five year sentence. N.Y. Penal Law §§ 70.00(2)(b); 220.16. On July 12, 2013, as a result of a plea bargain, Rivera pleaded guilty to the lesser offense of Criminal Possession of a Controlled Substance in the Seventh Degree for which he received the maximum one-year sentence. (Pl.'s Opp. Mem., Ex. C at 3). Inasmuch as Rivera has a lengthy criminal record, (see id., Ex. D at 9-11), does not contend that he was innocent, and fails to suggest that he would not have accepted the plea bargain had he been released, it is unclear what more favorable disposition realistically might have obtained. In any event, under New York State law, Rivera's sentence must be reduced by the amount of time he spent in custody prior to his plea. N.Y. Penal Law § 70.30(3). The result is that Rivera spent no additional time in jail as a result of his inability to be enlarged on bail. He consequently has not alleged any compensable damages.

V.    Conclusion

For the reasons set forth above, the Defendants' motions to dismiss the complaint, (ECF Nos. 24, 28), should be GRANTED.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable George B. Daniels and the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

SO ORDERED.

Dated:        New York, New York
              July 29, 2014

                                          FRANK MAAS
                                          United States Magistrate Judge

16

Copies to:

Honorable George B. Daniels (via hand delivery)
United States District Judge

Counsel for the Defendants     (via ECF)

Michael Rivera, 10A-1701     (via U.S. mail)
Freedom House
367 Howard Avenue
Brooklyn, NY 11211